UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIAMOND DAVIS,<br><br>    Plaintiff,<br><br>    v.<br><br>NORTHEAST CENTER FOR YOUTH & FAMILIES, INC. & KEVIN DAY,<br><br>    Defendants. | Civil Action No. 22-30009-MGM |

ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS
(Dkt. No. 9)
March 21, 2023

MASTROIANNI, U.S.D.J.

    This case involves Defendants' alleged failure to pay overtime compensation to Plaintiff and other similarly situated individuals. Plaintiff alleges violations of the Fair Labor Standards Act ("FLSA"), the Massachusetts Wage Act ("MWA"), and *quantum meruit*. Defendants now seek dismissal of all claims. For the reasons set forth below, Defendants' Motion to Dismiss is allowed.

    **I.**    **Background**

    For purposes of deciding the motion to dismiss, the court accepts as true the following facts alleged in Plaintiff's Complaint (Dkt. No. 1). Plaintiff was employed by Defendants – NCYF and Kevin Day, the President and Chief Executive Officer of NCYF – as a Residential Counselor for approximately nine months, where her base rate of pay fluctuated from $13.86 to $18.00 per hour. (*Id.* ¶¶ 17, 19). Plaintiff worked a minimum of forty (40) hours per week, as well as an additional weekly average of twenty-eight (28) hours in overtime. (*Id.* ¶ 18). Plaintiff also earned a differential rate of an extra dollar ($1) per hour for hours worked on Saturdays and Sundays. (*Id.* ¶ 19). Plaintiff therefore

contends that she should have been paid "1.5 times her base or differential rate in any given week after working more than 40 hours in a given week and or 7 day period." (*Id.*). Plaintiff concedes that Defendants have paid her leave time and few overtime hours since November 15, 2018. (*Id.* ¶ 20). However, even while omitting leave time and overtime payments made by Defendants, Plaintiff asserts approximately 904 hours of overtime remain unpaid for the period between November 15, 2018 and May 8, 2019. (*Id.*). According to Plaintiff, she is thus owed $10,991.68 for unpaid overtime wages, as well as $21,983 for treble damages in accordance with Mass. G.L. c. 149, § 150. (*Id.*).

## II.     Legal Standard

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In evaluating whether dismissal is appropriate under Rule 12(b)(6), the court must credit well-pleaded factual allegations as true and draw all reasonable inferences from those facts in the plaintiff's favor. *See Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013). Mere conclusory statements do not suffice. For a claim to proceed, the complaint must allege enough facts to plausibly establish each element of the claim and to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## III.     Discussion

### A.     Plaintiff's FLSA Claim

Defendants argue Plaintiff's FLSA claim (Count I) must be dismissed as time-barred. For claims relating to unpaid compensation, the FLSA applies a two-year statute of limitations. *See* 29

U.S.C. § 255(a). However, if a willful violation of the FLSA can be shown, the statute of limitations is extended an additional year, to three years. *See id.*

To establish a "willful violation" of the FLSA, the employee must demonstrate "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Whether or not a violation of the FLSA is "willful" is generally considered an "intensive inquiry not appropriately resolved on a motion to dismiss." *Gonpo v. Sonam's Stonewalls & Art LLC*, No. 16-cv-40138-MGM, 2018 WL 1725695, at *9 (D. Mass. Apr. 9, 2018) (citing *Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 381 (S.D.N.Y. 2012)). This approach, however, presupposes that the plaintiff has alleged enough facts to permit a reasonable inference of willfulness. In other words, Plaintiff must nevertheless satisfy the familiar pleading standard via factual rather than conclusory allegations. It is well established that "mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678 (reiterating that a plaintiff must "plead[] *factual content*" (emphasis added)).

Plaintiff alleges "Defendants willfully, knowingly, and/or recklessly violated the FLSA . . . by failing to properly pay overtime wage compensation to Plaintiff[.]" (Dkt. No. 1 at ¶ 22). Plaintiff also alleges Defendants "have not made a good faith effort to comply with the FLSA with respect to overtime compensation of Plaintiff." (*Id.* ¶ 23). Defendants correctly point out these allegations are wholly conclusory. (Dkt. No. 10 at 9). The court therefore disregards these allegations in its analysis and instead focuses only on the *facts* alleged in the Complaint. As relevant to willfulness, Plaintiff states that, since November 15, 2018, she has been paid for "leave time and [a] few overtime hours." (Dkt. No. 1 at ¶ 20). Plaintiff argues the fact she was paid for a few overtime hours suggests Defendants exercised oversight of their overtime compensation practices, such that they would reasonably be expected to know they failed to properly pay Plaintiff overtime wages. (Dkt. No. 11 at 8).

Within the First Circuit, however, allegations of willfulness must generally be much stronger to pass muster. For example, complaints that allege manipulation of or failure to maintain time records, inaccurate pay slips, payment of wages in cash to avoid documentation, or jobs that the employer knows often demands overtime work are sufficient to infer an employer willfully violated the FLSA. *See Gonpo*, 2018 WL 1725695, at *9 (specific allegations that defendant failed to keep full and accurate records of hours worked, underreported hours on pay slips, sometimes paid wages in cash, and consistently failed to pay overtime wages); *McCarthy v. Medicus Healthcare Sols., LLC*, 21-cv-668, 2022 WL 1004209, at *3–4 (D.N.H. Apr. 4, 2022) (allegations defendant knew about "undocumented" overtime hours, controlled all aspects of job including work schedule, knew job requirements frequently required overtime work, and only allowed plaintiff to document "approved overtime, giving rise to an inference that [defendant] was manipulating its wage reporting and recordkeeping practices and omitting some hours worked"); *Pineda v. Skinner Servs.*, 16-cv-12217, 2020 WL 5775160, at *2–3 (D. Mass. Sept. 28, 2020) (allegations defendants deliberately failed to keep complete time records of overtime worked, instructed employees to punch in at certain times, manipulated employees' time records in company's tracking system, paid employees in cash to prevent payments from appearing on official records, and ignored repeated complaints from employees regarding improper compensation).

No such allegations are present or can be reasonably inferred in this case. Plaintiff's Complaint contains a single factual allegation arguably relevant to the issue of "willfulness" and it notably lacks the implication of intentional or reckless conduct attendant to the allegations in the above-cited cases. Standing alone, the fact that Plaintiff was paid for a few overtime hours but not others suggests, at most, that Defendants acted negligently. Plaintiff does not contend Defendants failed to keep full and accurate records, manipulated time records, nor engaged in any other conduct that illustrates Defendants knew they were failing to properly compensate Plaintiff for overtime. Because Plaintiff's

allegations are insufficient to support a reasonable inference of willfulness, Plaintiff has failed to allege facts supporting application of the extended three-year statute of limitations.

Based on the traditional two-year statute of limitations, Plaintiff's FLSA claim is time-barred. The Complaint concerns conduct occurring between November 15, 2018 and May 8, 2019. (Dkt. No. 1 at ¶ 20). Thus, the two-year statute of limitations expired on May 8, 2021. Plaintiff's Complaint was not filed until January 15, 2022. Accordingly, the FLSA claim is dismissed without prejudice. *See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) ("Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that would warrant the application of . . . a different statute of limitations period . . . , dismissal is appropriate." (citation omitted)).

**B.     Plaintiff's State-Law Claims**

Defendants also argue § 301 of the LMRA preempts Plaintiff's state-law claims for *quantum meruit* and unpaid overtime compensation under the MWA, Mass. G.L. c. 149, § 150. Section 301 of the LMRA provides that federal common law must be applied in cases involving labor agreements, commonly referred to as CBAs. *See Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 209–11 (1985); *Cavallaro v. UMass Mem. Healthcare, Inc.*, 678 F.3d 1, 5 (1st Cir. 2012) (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456–57 (1957)). Any state law that "would frustrate th[is] federal scheme" is subject to preemption. *Lueck*, 471 U.S. at 209. In other words, when a state-law claim is either founded directly on rights created by collective bargaining agreements or its resolution "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 [LMRA] claim . . . or dismissed as preempted by federal labor-contract law." *Lueck*, 471 U.S. at 220; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987).

In evaluating whether a claim is substantially dependent on a collective bargaining agreement, the court must determine if the claim arguably "hinges upon" interpretation of the CBA. *Adames v.*

*Executive Airlines, Inc.*, 258 F.3d 7, 11 (1st Cir. 2001) (citing *Flibotte v. Penn. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997)). In other words, preemption depends upon whether the claim's adjudication appears to be "inextricably intertwined with consideration of the terms of [a] labor contract." *Lueck*, 471 U.S. at 213. Preemption does not apply when the claim raises "purely factual questions about an employee's conduct or an employer's conduct and motives that do not require a court to interpret any term of a collective bargaining agreement." *Hamilton v. Partners Healthcare Sys.*, 209 F. Supp. 3d 397, 406 (D. Mass. 2016) (citation and quotations omitted). A state-law claim may "escape LMRA preemption only if it requires no more than a 'bare' consultation of a CBA, without dispute as to 'the meaning of any contract terms.'" *Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 61 (1st Cir. 2021) (citation omitted; alteration adopted). "The line between consultation and interpretation has proven difficult to plot." *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 18 (1st Cir. 2018); *see also Rose*, 1 F.4th at 61 (describing distinction as "hazy"). Thus, if a claim so much as "plausibly requires interpretation" of the CBA, "it comes within the LMRA's preemptive sweep." *Rose*, 1 F.4th at 61 (citation omitted).

Although Plaintiff does not mention the CBA within her Complaint, her failure to do so does not negate its priority. *See Cavallaro*, 678 F.3d at 5 ("The interrelationship of the state claims and a CBA cannot be avoided merely by refusing to identify the CBA in the complaint and citing the well pleaded complaint rule."). Defendants assert that interpretation of the CBA is required to resolve Plaintiff's overtime claims, identifying several provisions that govern Plaintiff's compensation. (Dkt. No. 10 at 5). For example, Articles 19 and 20 of the CBA establish the hourly rates of pay, shift differentials, additional compensation based on additional job duties, and overtime premiums (work conducted on weekends) that are not required by state or federal law. (*See* Dkt. No. 10-2 at 20–23).

The court agrees with Defendants. Though not styled as breaches of contract, Plaintiff's claims are nevertheless "inextricably intertwined" with the provisions of the CBA. "Determining whether there are wages owed . . . will require construing and applying the various 'peculiarities of industry-

specific wage and benefit structures' embodied in the CBA[.]" *Cavallaro*, 678 F.3d at 8 (citation omitted).

As in *Cavallaro*, Plaintiff insists she is "not raising any interpretive dispute about the CBA or the method of calculating wages, but only a factual dispute as to whether [she was] paid for time spent working[.]" *Id.* But her arguments are unpersuasive for the same reasons articulated in *Cavallaro*: "in both situations, 'determining whether there are wages owed' will, at least arguably, 'require construing and applying' a portion of the CBA." *Rueli v. Baystate Health Inc.*, No. 14-cv-10319, 2015 WL 132662, at *3 (D. Mass. Jan. 9, 2015) (explaining why plaintiffs' attempt to distinguish *Cavallaro* was "distinction without a dispositive difference" where plaintiffs argued they were only asserting they had not been paid for all time worked, whereas *Cavallaro* concerned claims for compensation for meal breaks, training sessions, and work-related activities performed pre- and post- shift), *aff'd* 835 F.3d 53 (1st Cir. 2016). For example, Plaintiff's Complaint refers to her differential pay and fluctuating base rate of pay, both of which are set forth in the CBA. *See Rueli*, 2015 WL 132662, at *3 (citing *Hayes v. Aramark Sports*, No. 08-10700, slip op. at 6 (D. Mass. Mar. 30, 2009) (holding that, due to the "complexity of determining what actually is [plaintiffs'] regular rate of compensation," the court will necessarily have to interpret the CBA)); *Rose*, 1 F.4th at 62 ("[A]ny claim that entails a court 'determining what (if anything) is owed' to an employee who is within a bargaining unit will almost always 'depend[] at least arguably on interpretations and applications of the CBA at issue." (citation omitted)). And as Defendants point out, other provisions regarding hours of work (Article 19), overtime hours and premiums (Article 20), and additional compensation for additional job duties in certain situations (Article 35) will affect the court's evaluation of any wages owed. *See id.* (interpretation of CBA required where "the CBA adds qualifications to wage rates in light of a variety of factors," "adds qualifications to when and how overtime is to be computed," and contains provisions governing "hours of work, premium time, overtime, and classification and wages"); *Cavallaro*, 678 F.3d at 8 (interpretation

required where CBA provided for additional premium or differential compensation that "may offset any deficiency created by other uncompensated time for purposes of satisfying state minima").

Additionally, Plaintiff concedes that Defendants have paid her "leave time and few overtime hours." (Dkt. No. 1 at ¶ 20). *See, e.g., Adames*, 258 F.3d at 13 (affirming preemption of claims for overtime pay where CBA would need to be consulted to determine compensable overtime hours as well as to calculate base and overtime rates of compensation). Defendants' failure to compensate for other alleged overtime hours could arguably be based upon certain CBA provisions. For example, in the overtime provision, Defendants "reserve[d] the right to deduct wages *proportionately* for lateness and absence and to determine whether or not the lateness or *unauthorized absence is excusable*." (Dkt. No. 10-2 at 22) (emphasis added). To determine whether the provision applied in this case, the court would be required to interpret the terms "proportionately" and "excusable" to determine whether the unpaid compensation was indeed proportionate to lateness or absence as well as whether an absence or lateness was excusable. Likewise, as Plaintiff acknowledges that the overtime she was paid took into account her "leave time," analysis of the CBA's various leave provisions would be required to determine whether Plaintiff was shortchanged overtime pay, as she asserts.

In short, Plaintiff's Complaint does not involve a simple calculation of unpaid wages. Instead, the wages at issue are inextricably intertwined with the CBA's terms. Because an analysis of potential wages owed would arguably require "interpretation" of the CBA, the court concludes § 301 of the LMRA effectively preempts Plaintiff's state-law claims. Such claims are therefore subject to dismissal. *See Lueck*, 471 U.S. at 220.

### IV.    Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. No. 9) is ALLOWED.

It is So Ordered.

    /s/ Mark G. Mastroianni  
MARK G. MASTROIANNI  
United States District Judge